MICHAEL EDWARD HORN *v.* STATE OF INDIANA

[No. 1-1077A246. Filed May 31, 1978. Rehearing denied June 23, 1978. Transfer denied November 8, 1978.]

---

5. IC 1971, 35-13-4-5 (Burns Code Ed., Supp. 1977), repealed October 1, 1977.

*Charles L. Berger*, of Evansville, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *David Michael Wallman*, Deputy Attorney General, for appellee.

ROBERTSON, J.—Defendant-appellant Michael Edward Horn (Horn) appeals his conviction for aggravated assault and battery and raises as

errors: (1) prosecutorial misconduct; (2) an in court identification of Horn; (3) introduction of the weapon and test results; (4) admission of evidence concerning Horn's guilty plea in an earlier offense; and, (5) closing argument by the prosecutor concerning accessory law.

The facts viewed most favorably to the State show that Roland Lindsey (Lindsey) noticed a car in his front yard as he arrived home from work early one morning. After asking the driver what he was doing there and being told to get the hell out of the way, Lindsey told the driver to stay there and that he would have the police there shortly. Lindsey called police on his C. B. radio in his vehicle, and, as he put down the mike, he was knocked to the ground. While on the ground, Lindsey slit a back tire with his pocket knife when he heard the engine start on the driver's car.

Thereafter, as Lindsey held the driver, he felt something hit him in the back, turned, and saw Horn holding a knife. Lindsey then let go of the driver and ran to the middle of the street in an attempt to escape. One of the men shouted to the other to bring a tire tool, and Horn then approached Lindsey with the knife. Lindsey ran from the street into a neighbor's yard, stumbled, fell, covered his head, and then felt what he believed to be a number of blows to his back. Horn and the driver then drove away.

Later, a fireman, who had transported Lindsey to the hospital, saw a car of the make Lindsey had told firemen about going down the street with a flat tire. Firemen followed the car and reported the license number to a dispatcher to notify police. The car then came to a stop; Horn approached the ambulance, rudely asked what the ambulance men wanted, and then moved toward a nearby house. Police arrived, apprehended Horn, and took a knife from him.

On appeal, Horn urges error in three alleged instances of prosecutorial misconduct.

Horn first argues that the deputy prosecuting attorney's opening remarks were improper and prejudicial and took the form of evidence.  Horn claims that the State failed to preface its remarks with a statement such a "the evidence will show" or words to that effect. The record, however, clearly shows that the State began

its opening statement as follows:

> [T]his is opening statements and anything I say at this point in time is not evidence and cannot be taken by you as evidence. This is simply designed for the State as well as the defendant to have an opportunity to explain to you what they expect the evidence to be, what they expect to present during their case. It's more or less a skeletal outline, or some sort of thumbnail sketch so that you can get sort of an overview of the entire case.

In judging the propriety of a prosecutor's remarks, the court is to consider the statement in the context of the argument as a whole. *Swope v. State* (1975), 263 Ind. 148, 325 N.E.2d 193, *cert. denied,* 423 U.S. 870, 96 S.Ct. 135. Also, "the conduct of counsel in presenting argument to the jury lies within the discretion of the trial court whose judgment will not be set aside absent a showing of abuse of discretion." *Ervin v. State* (1972), 154 Ind. App. 89, 93, 289 N.E.2d 131, 134. The remarks in the present case do not constitute misconduct, and the trial court did not abuse its trial discretion in overruling Horn's objection.

Horn next alleges misconduct during State's cross-examination of Horn and claims that the court's admonishment was insufficient to cure the prejudicial effects of the State's remarks. We disagree. Here, the trial court made two admonishments as to the controverted remarks and therein cured whatever prejudicial effect, if any. " 'Where it appears that reasonable and prompt measures are taken by the trial court to prevent any injurious effects from such improper remarks . . .' the harm will be presumed to have been cured. *Rowley v. State* (1972), 259 Ind. 209, 216, 285 N.E.2d 646, 650." *Hoskins v. State* (1978), 268 Ind. 290, 375 N.E.2d 191. Further, aside from bare assertion, Horn has failed to demonstrate that the admonishments were insufficient. Horn also alleged error with respect to this incident in the trial court's overruling Horn's motion to withdraw the case from the jury. Rulings on mistrials for alleged attorney misconduct lie within the discretion of the trial court, *Rufer v. State* (1976), 264 Ind. 258, 342 N.E.2d 856, and will be overturned only upon a showing of clear error. No clear error has been demonstrated here.

As to the third alleged act of misconduct — prosecutorial remarks dur-

ing closing argument—Horn points to statements of opinion as to the evidence and truthfulness of witnesses made by the State. The trial judge properly overruled Horn's objections as our review of the transcript shows the remarks to have been clearly harmless.

Horn also raises issue with statements in the State's closing argument which, Horn alleges, were to the effect that the jury was a link in the law enforcement chain. The statement to which Horn objects is:

> It's been said that a chain is only as strong as its weakest link. I submit that the police officers have investigated and done their job; that the civil witnesses, the citizens have come forward and told you what occurred; that the Court has done its job; and that I have prosecuted this case to the best of my ability. Consequently, the chain of the enforcement of laws, whether they be for the defendant or the State of Indiana, is now passed to you in trust that *if you are satisfied beyond a reasonable doubt that this defendant is guilty of the crime* of Assault and Battery with intent to Kill, that you will return that chain both unbroken and uncompromised by finding by your verdict that the defendant is guilty as charged. So ladies and gentlement of the jury, it's up to you, and *I trust that after a full review of this case that you will give the State of Indiana, as well as the defendant Michael Horn, nothing less than full justice in your verdict of guilty as charged.* Thank you. (Our emphasis).

Horn claims that this argument "took them [the jury] out of their role of being impartial triers of the facts . . . . [and] left the jury with the impression that it is their duty as part of a chain of police action to convict anyone they bring before them." (Horn's brief.). We disagree. The underscored portions of the questioned argument, *supra,* properly speak to the considered role of the jury in adjudging the accused. Additionally, a prosecutor may state his opinion as to the guilt of the accused when opinion is based upon the evidence presented to the jury and when there is no implication of a prosecutor's personal knowledge of an accused's guilt or innocence. *Pearish v. State* (1976), 264 Ind. 339, 344 N.E.2d 296, 298; *Swope v. State, supra.* Our Supreme Court, furthermore, in *Warner v. State* (1976), 265 Ind. 262, 354 N.E.2d 178, 179, examined and sustained somewhat similar prosecutorial argument; we believe that the remarks here were no more objectionable or prejudicial than those in *Warner.* In our opinion, the

argument in the case at bar and as objected to did not place Horn "in a position of grave peril." *Id.* at 181.

Horn next assigns as error the overruling of his motion to suppress an in court identification of Horn. He argues that a pre-trial identification by the victim in a hospital hallway some thirty minutes to an hour after the incident was so impermissibly suggestive as to cause "irreparable misidentification." We find no error in the trial court's ruling. First, our Supreme Court, when presented a similar issue involving identification at a police show-up fifteen minutes after a robbery and a subsequent in court identification, recently stated:

It is clear that a one-on-one confrontation between suspect and victim is as a general proposition very suggestive, *Cooper v. State,* (1977), 265 Ind. 700, 359 N.E.2d 532, but it is not always unnecessarily suggestive. *Zion v. State* (1977), 266 Ind. 563, 365 N.E.2d 766; *Dewey v. State* (1976), 264 Ind. 403, 345 N.E.2d 842. The value of the witness's observing the suspect while the image of the offender is fresh in his mind has been held to make some immediate identifications not unnecessarily suggestive. *Zion, supra; Dillard v. State* (1971), 257 Ind. 282, 274 N.E.2d 387.

*Poindexter v. State* (1978), 268 Ind. 167, 374 N.E.2d 509. Any suggestive elements involved in the identification in the case at bar were not, in our opinion, unnecessarily suggestive.

Secondly, it is also the rule that "[i]dentifications which are subsequent to the suggestive procedure need be excluded only if the original impropriety is likely to result in later misidentification." *Poindexter, supra.* Here, Lindsey testified to observing Horn on two occasions during the attack: (1) when Lindsey was first struck from the rear and he turned and viewed Horn with the knife; and, (2) while Lindsey was standing in the middle of the street and Horn was coming towards him. A streetlight was also nearby. Moreover, upon questioning by the court on the motion to suppress, Lindsey testified that he would be able to identify Horn had the victim not observed Horn in the hospital. For the aforementioned reasons, the trial court properly overruled Horn's motion.

Horn alleges as a third error (1) that the knife should not have been introduced because of an impermissible police suggestion to the victim that it was the knife taken from Horn, and (2) insufficient foundation for the admission of tests made on the knife. As to the suggestivity contention, the record shows that at the hearing

on the motion to suppress, the victim testified: that he described the knife to officers at the scene; that he observed the knife in Horn's hand; and, while at the hospital the police showed Lindsey a knife and asked if he could identify it to which Lindsey replied that it looked like the knife. And then at trial Lindsey said that the knife looked like the knife he had seen that night. In *Pullins v. State* (1970), 253 Ind. 644, 256 N.E.2d 553, the Supreme Court held proper the admission of a weapon where the complaining witness testified that the weapon looked like the one used in a robbery. The *Pullins* court stated, "Where there is evidence of identification by direct testimony, objections to its sufficiency go to the weight rather than to the admissibility of the articles." 253 Ind. at 648, 256 N.E.2d at 555. Considering *Pullins* and the reasons cited above with respect to the second allegation of error, we hold that there was no error in the introduction or identification of the knife.

As to the insufficient foundation contention, Horn argues that the police officer who tested the knife for blood was not qualified as an expert. As a general rule, an expert may be qualified by practical experience as well as by formal training. *Guyton v. State* (1973), 157 Ind. App. 59, 299 N.E.2d 233. The determination of whether a witness is qualified to testify as an expert lies in the sound discretion of the trial court and may not be set aside unless there is manifest abuse of discretion. *Niehaus v. State* (1977), 265 Ind. 655, 359 N.E.2d 513, 516. We have been shown no such abuse. Here, the testing officer testified that: he had been trained to perform tests by another experienced officer; he had read literature on the manner of taking the test; and, he had been supervised by the other officer in making the test on the knife in question here. This was sufficient foundation for the admission of the test results.

As his fourth assigned error, Horn questions the propriety of evidence admitted as to a prior guilty plea of entering to commit a felony and an instruction following therefrom. At a hearing outside the presence of the jury, Horn's counsel moved for a protective order, based upon an *Ashton v. Anderson*[1] analysis, to prohibit the State from referring to a burglary charge and the later conviction from that charge of entering to commit a felony.

---

1. (1972), 258 Ind. 51, 279 N.E.2d 210.

A lengthy discussion followed on this matter which included at one point the following statement by Horn's counsel:

> Your Honor, I would like the record to indicate that if I would ask Mr. Horn the question of has he been convicted of entering to commit a felony, that that not be indicative of a waiver of my objections asserted at this time, and this is the reason why they were asserted prior to the time Mr. Horn would take the witness stand.

The trial court, in overruling Horn's motion, said that the question as to waiver was one which the appellate court would have to address should an appeal follow in Horn's case.

Our disposition of this issue does not require our deciding whether under *Ashton* and its progeny the offense of entering to commit a felony is proper for impeachment purposes. We leave that for another case which properly frames the issue. In the case at bar, we conclude that Horn waived any error as to the evidence admitted.

In *Martin v. State* (1974), 261 Ind. 492, 494, 306 N.E.2d 93, 94, our Supreme Court held that "the rule is well established that once a party opens up a subject on direct examination, he can not close the subject to cross-examination at his own convenience." Here, Horn injected the subject of prior criminal conduct on direct with the following colloquy:

Q. Now, Mr. Horn you've previously pled guilty to entering to commit a felony, is that correct?

A. Yes, it is.

Direct examination then concluded. Subsequently, the State began cross-examination with the following question:

Q. You're not serving time now as a result of that plea, is that correct.

A. That is correct.

A review of the record shows no further questioning by the State as to the offense injected into the case by Horn. We fail to understand how the State's question as asked might have been prejudicial to Horn. More importantly, Horn failed to object to the question asked by the State. Having failed to properly object at trial, Horn may not raise the error

on appeal. *Hannah v. State* (1974), 160 Ind. App. 317, 321, 311 N.E.2d 838, 840, and cases cited therein. Horn's argument is therefore also without merit with respect to any error in the giving of State's Instruction No. 7, which stated generally that evidence of prior criminal conviction had been introduced and that such evidence could be considered for purposes of credibility only. The instruction questioned here was quoted and approved in *Lambert v. State* (1969), 252 Ind. 441, 452, 249 N.E.2d 502, 508. As given in the case at bar, it properly instructed the jury as to the evidence presented and evidence which was not objected to at trial.

Horn's final asserted error regards State's closing argument concerning accessory law. We have found no error. It is proper for counsel to argue both the law and the facts in a criminal case. *Kilgore v. State* (1976), 170 Ind. App. 569, 354 N.E.2d 254, 256. Control of final argument is also generally within the sound discretion of the trial court and a decision will only be reversed upon a demonstration of abuse of discretion. *Kilgore, supra.* Horn has shown no abuse. Also, the trial court's statement to the jury that it could accept arguments on the law by the trial counsel as merely argument, in our opinion, cured any prejudice.

Having found no error, we therefore affirm.

Judgment affirmed.

Lybrook, P. J. and Lowdermilk, J., concur.

NOTE — Reported at 376 N.E.2d 512.