**Cedric MORRIS, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 2–379A56.

Court of Appeals of Indiana,
Fourth District.

Dec. 18, 1979.

Kenneth C. Kern & Associates, Kenneth C. Kern and Hart E. Meyer, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

The appellant, Cedric Morris, was convicted of robbery under IC 1979 Supp., 35–42–5–1, and sentenced to a term of six years. Because of our determination of his first alleged error, we do not reach the remaining issues.

The evidence in this case is that a shoe store was robbed by two persons, male and female, each armed with a gun. Morris was arrested seventeen days later. The trial court admitted into evidence a gun which was found in the purse of a woman passenger in Morris' car when he was arrested. At the time of the arrest Morris claimed the gun as his. At trial, Morris objected that there was insufficient foundation connecting the gun to the robbery.

The two victims of the robbery each described the guns used by the robbers. The man's gun was a silver revolver with a four or five inch barrel, resembling a police revolver, ten inches long altogether. The male robber told one victim that it was a .357 Magnum. That witness stated he took the robber's word for it, regarding the caliber, but was absolutely sure it was not a "snubnose." The woman's gun was smaller than the man's but still not a snubnose. The victims were not shown the gun found at Morris' arrest to determine if it were similar. The photograph of it in the record discloses that it is short-barreled—a snubnose, in fact.

After a lengthy hearing outside the presence of the jury, the trial court found the gun admissible because two guns were used in the robbery, a large one carried by the man and a smaller one carried by the woman, and Morris admitted the gun was his. We note that the State made no effort to connect the woman in the car with the female robber. In fact they investigated an entirely different one. She was charged only with possession of a handgun. She testified for the defense in the suppression hearing, but was not called to testify before the jury, nor was her appearance described by the arresting officers so that any comparison could be made.

The relevance and materiality of all evidence is a precondition of its admissibility. *Williams v. State*, (1978) Ind., 379 N.E.2d 981. Because even a slight tendency to prove a material fact renders evidence admissible, positive proof or positive authentication is not a prerequisite for admission. *Collins v. State*, (1977) 266 Ind. 430, 364 N.E.2d 750, 753. That proof or authentication is not positive only reflects on the weight of the evidence. *Wilson v. State*, (1978) Ind., 374 N.E.2d 45. In no case, however, has such evidence been admitted without some indication that it is at least similar to the weapon used in the crime. *See e. g., Hill v. State*, (1979) Ind., 394 N.E.2d 132 (testimony that accomplice held a sawed-off weapon); *Williams v. State, supra*, (identified as murder weapon); *Bur-*

*nett v. State*, (1978) Ind., 377 N.E.2d 1340 (co-defendant identified gun as murder weapon); *Crosson v. State*, (1978) Ind., 376 N.E.2d 1136 (victim identified gun); *Wilson v. State*, (1978) Ind., 374 N.E.2d 45 (witness identified shotgun by carvings on stock); and *Pullins v. State*, (1970) 253 Ind. 644, 256 N.E.2d 553 (guns found along highway admissible because victim testified they were similar, and evidence that a shotgun was seen thrown from getaway car). In *Minton v. State*, (1978) Ind., 378 N.E.2d 639, similar to the present case except that a knife was found which the defendant claimed, the court held the knife relevant to show that the defendant "had access to a knife which may have been the one used in the robbery." 378 N.E.2d at 642. We cannot say as much in the present case without necessarily presuming that the two witnesses were mistaken. Their testimony was unequivocal. Thus, the State in fact established that the gun was probably not used in the robbery.

The State has urged that any error in admitting the gun into evidence was harmless, because the evidence of Morris' guilt did not depend on it. The question is not whether there is sufficient evidence to support the conviction absent the improper evidence, but whether the evidence was likely to have a prejudicial impact on the jury. *Mitchell v. State*, (1972) 259 Ind. 418, 287 N.E.2d 860, 863. In *Sulie v. State*, (1978) Ind., 379 N.E.2d 455, the erroneous admission of a bullet found in the defendant's pocket was held not likely to have a prejudicial impact on the jury because the other evidence of guilt was overwhelming. There, uncontradicted testimony positively identified the defendant. In the present case there are two positive identifications. They are contradicted, however, by the testimony of Morris and fourteen alibi witnesses. A similar problem arose in *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312. Our Supreme Court adopted the United States Supreme Court standard for determining whether error is harmless:

" '[I]f one cannot say, with fair assurance, after pondering all that happened with-

out stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'" (*Fiswick v. United States,* (1946) 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196, quoting *Kotteakos v. United States,* (1946) 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557).

272 N.E.2d at 318. In *White,* three witnesses to a hold-up identified the defendant as the robber. The defendant asserted a defense of mistaken identity. He, his wife, and his wife's parents all testified that they were together somewhere else at the time of the hold-up. Further, six character witnesses testified to his honesty and quietude. There was no rebuttal evidence. We believe that the Supreme Court's conclusion is dispositive of the present appeal:

> "The foregoing is all of the evidence of probative value that was presented at the trial. The jury was thus confronted with determining whether to place the greater reliance upon the correctness of the identification by the State's witnesses or upon the integrity of the defendant and his alibi witnesses; for it is inescapable that if the prosecuting witnesses were accurate in their identification, not only the defendant, but his wife and her parents as well, committed unmitigated acts of perjury. We do not question the sufficiency of the evidence to sustain the verdict; but we cannot say with certainty that with such a difficult decision to make in the face of such conflicting testimony the jury was not influenced by the improper testimony of Officer Estes deliberately induced by the prosecutor, notwithstanding the admonition by the trial judge to disregard it.

272 N.E.2d at 319. We do not distinguish *White* because it involved an evidentiary harpoon; rather we note that the likelihood of prejudicial impact is greater where the jury is permitted to consider improper evidence rather than admonished to disregard it.

Because we find that the gun was erroneously admitted and because we are not assured that any prejudicial impact was only very slight, we must reverse Morris' conviction.

The judgment is reversed and a new trial ordered.

MILLER, P. J., and CHIPMAN, J., concur.