James **HOLLOWELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–9802–CR–103.

Court of Appeals of Indiana.

March 25, 1999.

Lesa Lux Johnson, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Chris Worden, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant James Hollowell ("Hollowell") appeals from his conviction for battery as a Class C felony.

### Facts and Procedural History

The facts most favorable to the judgment reveal that on April 27, 1997, James Clark ("Clark") went to a party at Marjorie Lilley's ("Lilley") house located at 25 South Tuxedo Avenue, Indianapolis, Indiana. The following day, Clark realized that he had lost his red pager and called people who were at the party to ask if they had found it. On two separate occasions, Clark asked Hollowell, who was at the party, if he knew the whereabouts of his pager. Hollowell denied having any knowledge about Clark's pager.

On May 3, 1997, Clark decided to call his pager using his brother's telephone number followed by "69," which is a street code for a female caller. Fifteen minutes later, the telephone rang and Clark answered the phone. Clark recognized the caller's voice as Hollowell's, and Hollowell identified himself as the person who had been paged. Clark said, "Man, I thought you didn't have my pager—you didn't know anybody that had my pager. Man, I be getting my pager and when I see you, I'm going to hit you in your mouth." About twenty minutes later, Clark drove to Lilley's house to retrieve his pager from Hollowell. Roy Murphy ("Murphy")

and Shawn Ingram ("Ingram") accompanied Clark to Lilley's home.

After speaking with Clark, Hollowell became agitated and started pacing around the house. When Lilley inquired about what was going on, Hollowell responded, "[I'm] tired of being punked by everybody. [I'm] tired of being punked out by [Clark]. I'll be ready for [Clark], if he's going to punch me in the mouth." Hollowell changed out of his work clothes, put on a dark sweatshirt, and clutched a white-handled pocketknife in his hand. Hollowell then went outside and started pacing up and down beside Lilley's house.

When Clark arrived at the house, Hollowell was standing on the porch. Clark got out of his car and stood behind the driver's side door. Murphy also got out of the car and went to talk to Lilley's daughter, who was on the porch, while Ingram remained in the car listening to the radio. Hollowell approached Clark and handed him his pager. Clark then punched Hollowell in the mouth and Hollowell jumped back. Hollowell then grabbed Clark, and the two started wrestling. As they wrestled, Clark felt a puncture on the left side of his torso.

Clark attempted to retreat but Hollowell swung at him with his knife again; however, Clark was able to block his arm. Clark then yelled, "I've been stabbed," and tried to run away from Hollowell. As Clark was running away, Hollowell stabbed Clark in the buttocks. Hollowell then chased Clark down the street, yelling, "I'm still going to get you," and swinging his white-handled knife. Clark ran into a Walgreen's Drug Store and asked someone to call an ambulance. While being treated by the paramedics, Clark told Officer Lisa Weilhamer of the Indianapolis Police Department that Hollowell had stabbed him and that Hollowell lived at 25 South Tuxedo Avenue.

Murphy was not aware of the stabbing but did see Hollowell chasing Clark down the street and decided to investigate. When Murphy caught up with Hollowell, he saw the white-handled knife in his hand and heard Hollowell say that it was not over yet because he was still going to get Clark. Although Murphy was able to calm Hollowell down, he was unsuccessful in taking the knife away from him.

Laverne Murphy ("Laverne"), a next door neighbor, went over to Lilley's house to watch her children. When Hollowell returned to the house, Lilley and Laverne both saw him place the white-handled knife into a black nylon gym bag. Hollowell then changed back into his work uniform and placed the black sweatshirt into the nylon bag. The police later arrived at Lilley's house and arrested Hollowell. The police recovered the white-handled knife from his black duffel bag.

Clark was hospitalized for five days at Wishard hospital. Clark had received a 4 centimeter stab wound that required emergency surgery. During the surgery, the doctors discovered minor internal bleeding, a small laceration on his kidney, and some blood-tinged urine. The stab wound was sealed with staples, and he was placed on a liquid diet for three days.

On May 5, 1997, the State charged Hollowell by information with one count of battery as a Class C felony. On July 7, 1997, the State also alleged by information that Hollowell was a habitual offender. On January 5, 1998, Hollowell's jury trial commenced. Hollowell asserted a self-defense theory. During trial, the State offered into evidence Clark's medical records from Wishard Hospital. A juror commented that the medical records indicated that Clark was admitted into the hospital on April 3, 1997, not May 3, 1997. The trial court informed the jury that the April 3 date was a typographical error.

At the conclusion of the State's case-in-chief and outside the presence of the jury, Hollowell moved for a directed verdict, arguing that the State had failed to prove all the essential elements of battery and had failed to present any evidence to disprove Hollowell's self-defense theory. The trial court denied Hollowell's motion, finding that the State had met its burden of proof. The trial court then proceeded with a discussion of the final instructions. After Hollowell reviewed the trial court's proposed instructions, he interposed an objection to the battery instruction. Hollowell argued that the instruction should specifically state that under the

battery statute, the State must establish that Hollowell had committed battery by means of a deadly weapon and caused serious bodily injury. When the trial court requested to see the suggested instruction, Hollowell admitted that he did not have a written instruction prepared to present to the trial court. The trial court then refused to give Hollowell's orally tendered instruction.

When the jury was returned to the courtroom, Hollowell rested his case without presenting any evidence. The State then began to make its final argument. During the final argument, the prosecutor discussed the elements of battery as a Class C felony and discussed the injury that Clark had sustained as a result of being stabbed. Hollowell objected to the State's presentation of the evidence, arguing that the State was obligated to prove both the use of a deadly weapon and serious bodily injury. The trial court overruled his objection.

After the jury retired to deliberate, Hollowell moved for a mistrial. Hollowell asserted that the State had misstated its burden of proof and had misrepresented the law on self-defense. The trial court took the matter under advisement and later in the proceedings denied Hollowell's motion for a mistrial.

On January 6, 1998, the jury returned a guilty verdict against Hollowell for the battery charge. After the jury was removed from the courtroom, Hollowell requested a judgment notwithstanding the verdict, arguing that the State had failed to establish all the essential elements of battery; had failed to negate Hollowell's self-defense claim; and had misrepresented its burden of proof and the law of self-defense. The trial court denied Hollowell's motion and proceeded to the habitual offender enhancement phase. In a separate proceeding, the trial court adjudicated Hollowell to be a habitual offender.

On February 4, 1998, the trial court sentenced Hollowell to a term of twelve years' imprisonment: eight years for the Class C felony battery, plus four years' enhancement for the habitual offender conviction.

**Issues**

Hollowell presents four issues that are dispositive of our review:

(1) whether the trial court erred by denying Hollowell's motion for a directed verdict at the conclusion of the State's evidence;

(2) whether Hollowell was prejudiced by the manner in which the trial court commented upon exhibits admitted into evidence;

(3) whether the trial court abused its discretion by refusing Hollowell's orally tendered instruction on battery; and

(4) whether the trial court abused its discretion by denying Hollowell's motion for a mistrial based upon alleged instances of prosecutorial misconduct during final argument.

**Discussion and Decision**

### I. Motion for Directed Verdict

Hollowell argues that the trial court erred by denying his motion for a directed verdict at the conclusion of the State's case-in-chief. The State need only present a prima facie case in order to avoid an adverse directed verdict.[1] *Wilcox v. State*, 664 N.E.2d 379, 382 (Ind.Ct.App.1996). A motion for a directed verdict is properly granted only where there is a total absence of evidence on an essential element of the crime or the evidence is without conflict and susceptible to only one inference in favor of the defendant's innocence. *Guy v. State*, 678 N.E.2d 1130, 1134 (Ind.Ct.App.1997); Ind. Trial Rule 50(A). If the evidence is sufficient to sustain a conviction on appeal, then the trial court's denial of a motion for a directed verdict cannot be in error. *Guy*, 678 N.E.2d at 1134.

When reviewing the sufficiency of the evidence, this Court neither reweighs the evidence nor determines the credibility of the witnesses. *Id.* Rather, we will consider only the evidence most favorable to the verdict, together with all reasonable inferences to be drawn therefrom. *Id.* The conviction will be

---

1. " 'Prima facie' means such evidence as is sufficient to establish a given fact and which will remain sufficient if uncontradicted." *Mullins v. State*, 646 N.E.2d 40, 50 (Ind.1995)

affirmed if substantial evidence of probative value exists from which a trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

### A. Elements for Battery as a Class Felony

First, Hollowell contends that he was entitled to a directed verdict because the evidence adduced at trial was insufficient to support his conviction for battery as a Class C felony. Specifically, Hollowell argues that there was no evidence to prove that he used a deadly weapon *and* caused serious bodily injury. In the charging information, Hollowell was accused conjunctively of battering Clark "by means of a deadly weapon, that is: a knife... which resulted in serious bodily harm, that is: a perforated intestine." Hollowell suggests that the State was required to prove not only use of a deadly weapon but also serious bodily injury to sustain his conviction for battery.

■ Indiana has long recognized that when an indictment or information conjunctively charges acts which are disjunctively proscribed in the criminal statute, only one of the acts need be proven in order to support a conviction. *Chubb v. State*, 640 N.E.2d 44, 47, n. 2 (Ind.1994). *See Brown v. State*, 239 Ind. 358, 368, 157 N.E.2d 174, 178 (1959), wherein our supreme court stated that:

[a] statute often makes punishable the doing of one thing or another, sometimes thus specifying a considerable number of things. Then, by proper and ordinary construction a person who in one transaction does all, violates the statute but once, and incurs only one penalty. Yet he violates it equally by doing one of the things. Therefore, the indictment on such a statute may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction "and" where the statute has "or" and it

will not be double, and it will be established at the trial by proof of any one of them.

quoting *Howard v. State*, 191 Ind. 232, 236, 131 N.E. 403, 404–405 (1921), *citing* 1 Bishop, New Criminal Procedure, § 436. *See also Davis v. State*, 476 N.E.2d 127, 132 (Ind.Ct. App.1985), *trans. denied* (1987) (Indiana adheres to the conjunctive rule, which allows the prosecution to charge disjunctive acts in conjunctive language); *Booker v. State*, 270 Ind. 498, 503, 386 N.E.2d 1198, 1201 (1979) (even though the information charging the defendants utilized the conjunction "and" in place of "or" employed within the statute, the State was only obligated to prove either of the acts charged).

Here, although the State charged Hollowell in the conjunctive, it was only required to prove either use of a deadly weapon or serious bodily injury to sustain Hollowell's conviction. Therefore, we will address whether the State has met its burden. It is well settled that every criminal conviction must be supported by evidence of each material element of the offense charged. *Gibbs v. State*, 677 N.E.2d 1106, 1108 (Ind.Ct.App. 1997), *trans. denied.* "A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery ... a Class C felony if it results in serious bodily injury to any person or if it is committed by means of a deadly weapon[.]" IND. CODE § 35–42–2–1(a)(3).[2]

■ A review of the record reveals that Hollowell was armed with a white-handled pocket knife when he approached Clark. Clark testified that Hollowell had stabbed him in the side as the two wrestled. Murphy testified that Hollowell had a white-handled pocket knife when he caught up with him. In addition, Laverne and Lilley both testified that they heard Clark yell that he had been stabbed and later saw Hollowell place the

---

2. "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ." IND. CODE § 35–41–1–25.

" 'Deadly weapon' means the following: (1) A loaded or unloaded fireman. (2) A weapon, device, taser ... or electronic stun weapon ..., equipment, chemical substance, or other material that in the manner it is used, or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury." IND. CODE § 35–41–1–8.

blood stained knife into his duffel bag. From this evidence, the jury could have concluded that Hollowell committed battery with a deadly weapon.

■ Clark also testified that after Hollowell had stabbed him, his intestines protruded from his body. The medical records indicated that Clark sustained a 4 centimeter stab wound on the lower left side of his torso. Clark had emergency surgery for his wound, during which the doctors also discovered minor internal bleeding and a small kidney laceration. In addition, Clark was placed on a liquid diet for three days of the five days he was hospitalized. From this evidence, the jury could reasonably infer that Hollowell's knife inflicted serious bodily injury. Therefore, there was ample evidence from which a jury could reasonably infer that the battery was either committed by means of a deadly weapon or that it resulted in serious bodily injury, or both.

### B. Self–Defense

■ Second, Hollowell maintains that the State failed to produce evidence sufficient to negate his claim of self-defense, warranting a directed verdict. A valid claim of self-defense is a legal justification for an otherwise criminal act. *Mariscal v. State*, 687 N.E.2d 378, 381 (Ind.Ct.App.1997), *trans. denied* (1998). For a claim of self-defense to prevail, the defendant must demonstrate that he (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *McEwen v. State*, 695 N.E.2d 79, 90 (Ind.1998); *see also* IND. CODE § 35–41–3–2(a). The amount of force used to protect oneself must be proportionate to the urgency of the situation. *Geralds v. State*, 647 N.E.2d 369, 373 (Ind.Ct.App.1995), *trans. denied.* "Where a person has used more force than necessary to repel an attack the right to self-defense is extinguished, and the ultimate result is that the victim then becomes the perpetrator." *Id.*

**3.** Hollowell also claims that the trial court erred by denying his motion for judgment notwith-

■ "When a self-defense claim is raised casting some reasonable doubt as to guilt, the State has the burden of proving beyond a reasonable doubt that the defendant did not meet at least one of the elements necessary to prove that justification." *Spann v. State*, 632 N.E.2d 741, 743 (Ind.Ct. App.1994). The State may rebut a self-defense claim by affirmatively showing that the defendant did not act to defend himself or by relying on the evidence elicited in its case-in-chief. *Mariscal*, 687 N.E.2d at 381. When reviewing a question of whether the State negated the defendant's claim of self-defense beyond a reasonable doubt, our standard is the same as in any other challenge to the sufficiency of the evidence. *Spann*, 632 N.E.2d at 743. A defendant's conviction, despite a claim of self-defense, will not be reversed unless no reasonable person can say that the State negated the claim beyond a reasonable doubt. *Mariscal*, 687 N.E.2d at 381.

■ The fact that Clark was the initial aggressor is not dispositive as to whether Hollowell's use of deadly force was a reasonable response. Although Hollowell was in a place where he had the right to be and did not provoke the violence, we cannot find that Hollowell was in fear of serious bodily injury. After speaking with Clark, Hollowell became agitated, changed his clothes, and armed himself with a knife. In addition, Hollowell told Lilley that he was going to be ready for Clark if he punched him. Clark attempted to retreat after Hollowell initially stabbed him, but Hollowell tried to stab him again; as Clark was running away from him, Hollowell stabbed Clark in the buttocks. Hollowell then chased Clark down the street swinging his knife and yelling that he was still going to get him. Even though Clark struck Hollowell in the mouth with his fist, we cannot accept his argument that being struck in the mouth was life-threatening enough to justify self-defense with a knife. Because there existed sufficient evidence from which the jury could reasonably find that Hollowell did not validly act in self-defense, the trial court did not err in denying Hollowell's motion for directed verdict.[3]

standing the verdict. When the trial court considers a motion for judgment on the evidence

## II. Judicial Impartiality and Neutrality

 Hollowell next asserts that the trial judge's comment regarding State's exhibit # 14 (Clark's medical records) violated the court's obligation of impartiality and neutrality. A trial before an impartial judge is an essential element of due process. *Timberlake v. State*, 690 N.E.2d 243, 256 (Ind. 1997), *cert. denied*, ── U.S. ──, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). This impartiality is especially important due to the great respect that a jury accords the judge and the added significance that a jury might give to any showing of partiality by the judge. *Id.* Therefore, a trial court has a duty to remain impartial and refrain from making unnecessary comments or remarks. *Taylor v. State*, 602 N.E.2d 1056, 1059 (Ind.Ct.App.1992), *trans. denied* (1993). However, not all untoward judicial remarks constitute reversible error; the remarks must harm the complaining party or interfere with the right to a fair trial. *Id.*

 Here, the prosecutor requested that the jury be permitted to view Clark's medical records regarding his injuries as a result of the stabbing. The medical records in question listed Clark's admission date to Wishard Hospital as April 3, not May 3, 1997. Hollowell points to the following exchange as evidence of judicial misconduct:

[PROSECUTOR]: And at this time, Your Honor, we would ask that photo copies of that certified packet [Clark's medical records] be passed to each juror so they would have a chance to read through [them].

COURT: All right. You may.

JUROR, [ ]: Are we allowed to ask a question?

COURT: What is your question[?]

JUROR: This states that he [Clark] was admitted to the hospital 4–3–97.

COURT: That apparently is a typographical error.

The trial judge's response to the juror's question cannot be characterized as a positive indication of personal bias towards Hollowell. Although the date of admission was erroneous, the treating physician noted, on the same document, that Clark was admitted on May 3, 1997, with a stab wound. In addition, the State alleged, in its charging information, that Hollowell stabbed Clark on May 3, 1997. Furthermore, Clark testified that he was stabbed on May 3, 1997, and that he went to the hospital on that date as a result of his injuries to seek medical treatment. From this, the jury could conclude that the initial admission date was incorrect. The trial court's comment cannot be construed as an abandonment of impartiality. Because Hollowell has failed to demonstrate how this remark prejudiced his case or denied him a fair trial, this Court finds no basis for a reversal of his conviction.

## III. Tendered Instructions

 Hollowell suggests that the trial court erred by refusing his orally requested final instruction for battery that laid out the specific elements and allegations charged in the information. Hollowell maintains that the erroneous instruction given by the trial court relieved the State of its burden to prove beyond a reasonable doubt that Hollowell used a deadly weapon *and* caused serious bodily injury. Ordinarily, the failure to timely object to a jury instruction waives the alleged error for appellate review. *Sanchez v. State*, 675 N.E.2d 306, 308 (Ind.1996). *See also* Ind.Crim. Rule 8; Ind. Trial Rule 51(C) ("no party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider the verdict, stating distinctly the matter to which he objects and the grounds of his objection"). A defendant has waived his right to appeal a trial court's final instruction by failing to object to the instruction when it is tendered as a preliminary instruction. *Hendrickson v. State*, 690 N.E.2d 765, 768 (Ind.Ct.App.1998). *See Phillips v. State*, 496 N.E.2d 87, 89 (Ind.

---

subsequent to the jury's verdict, it must view the evidence in a light most favorable to the nonmoving party and the reasonable inference to be drawn therefrom. *First National Bank v. City of Portage*, 590 N.E.2d 1110, 1111 (Ind.Ct.App. 1992), *trans. denied*. The verdict will be set aside only where the evidence points unerringly to a conclusion not reached by the jury. *Id.* Because the evidence was sufficient to support the jury's verdict, the trial court properly denied Hollowell's motion for judgment notwithstanding the verdict.

1986) (defendant waived any alleged error predicated on the trial court's final instruction by failing to object or specifically state grounds for objection until the preliminary instruction was tendered to the jury as a final instruction).

■■■ The trial court explicitly asked Hollowell if he had any objection to the proposed preliminary instructions, which included the battery instruction, and Hollowell answered in the negative. The preliminary instructions were then read to the jury. Hollowell did not object or specifically state the grounds for his objections to the battery instruction until it was tendered to the jury as a final instruction. Hollowell's failure to make a timely objection to this instruction has waived the alleged error for our review. *See Hendrickson,* 690 N.E.2d at 768. Hollowell has also waived review of this issue on other grounds.

■■■ A defendant may not complain about the trial court's refusal to give an instruction on a particular subject unless the defendant has tendered an appropriate instruction that was refused. *Day v. State,* 669 N.E.2d 1072, 1075 (Ind.Ct.App.1996). Our supreme court has held that where a jury instruction is claimed to be inadequate, the party challenging the instruction must tender an alternative, substitute written instruction in order to preserve the issue for appeal. *Whittle v. State,* 542 N.E.2d 981, 991 (Ind.1989). *See Collier v. State,* 470 N.E.2d 1340, 1342 (Ind. 1984). If the party fails to offer an alternative, substitute instruction, the issue is waived, even if an objection has been made in the record. *Id.*

At trial, Hollowell objected to the trial court's final instruction concerning the elements of battery. Hollowell argued that the instruction should specifically state that the State had to establish both use of a deadly weapon and serious bodily harm. However, Hollowell did not have an alternative instruction prepared to present to the trial court; therefore, the trial court refused his oral tendered instruction. By failing to tender his own correct written instruction, Hollowell has waived any alleged error predicated on the trial court's final instruction on battery.

■■■ Waiver notwithstanding, Hollowell's argument is still without merit. Our standard for deciding whether the trial court erred in failing to give a requested instruction is well established. When reviewing the propriety of the trial court's decision to refuse a tendered instruction, this Court must consider the following: (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the instruction is covered by other instructions. *Day,* 669 N.E.2d at 1075. Jury instructions are not to be considered in isolation but as a whole and in reference to each other. *Gambill v. State,* 675 N.E.2d 668, 674 (Ind.1996). Before a defendant is entitled to a reversal, he must affirmatively show that the instructional error prejudiced his substantial rights. *Jewell v. State,* 672 N.E.2d 417, 425 (Ind.Ct.App. 1996), *trans. denied.* Jury instructions lie largely within the sound discretion of the trial court and are reviewed only for an abuse of discretion. *Id.* An abuse of discretion will be found only where the individual instruction is erroneous or where the instruction, taken as a whole misstates the law or otherwise misleads the jury. *Hart v. State,* 671 N.E.2d 420, 424 (Ind.Ct.App.1996).

In both the preliminary and final instructions, the trial court instructed the jury on the essential elements of the battery as follows:

A person who knowingly touches another person in a rude, insolent, or angry manner commits Battery, a Class B misdemeanor. However, the offense is a Class C felony if it results in serious bodily injury to any person other than the defendant, or is committed by means of a deadly weapon.

To convict a defendant under count I, the State must prove each of the following elements:

1. A defendant
2. knowingly
3. touched
4. another person
5. in a rude, insolent or angry manner.

If the State fails to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State does prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of Battery, a Class B misdemeanor.

If the State further proves beyond a reasonable doubt an additional element that the offenses resulted in serious bodily injury to any person other than the defendant or was committed by means of a deadly weapon, you should find the defendant guilty of Battery, a Class C felony.

▌ Here, the information charged Hollowell with battery by means of a deadly weapon *and* causing serious bodily injury. The final instruction informed the jury that Hollowell could be found guilty if the State established that he used a deadly weapon *or* caused serious bodily injury. However, as previously noted, when an information conjunctively charges acts that are disjunctively proscribed in the criminal statute, only one of the acts need be proven in order to support the conviction. *Chubb,* 640 N.E.2d at 47, n. 2. The State presented sufficient evidence to prove that Hollowell committed battery with a deadly weapon and battery resulting in serious bodily harm. The jury was not permitted to find Hollowell guilty of an offense for which he was not charged. In addition, the jurors were given an instruction which expressly set forth Hollowell's battery charge and were told that the State had to prove every essential element of the crime charged in the information beyond a reasonable doubt before the jury could find Hollowell guilty. Moreover, the instruction was a correct and adequate statement of the law. Generally, it is not erroneous to give an instruction in the language of the applicable statute. *Dixon v. State,* 425 N.E.2d 673, 678 (Ind.Ct.App.1981). The evidence was sufficient to sustain Hollowell's conviction for battery by use of a deadly weapon *and* causing serious bodily injury; therefore, in light of the proof rendered at trial as well as the other instructions tendered, we find that any error in giving this battery instruction is harmless.

### IV. Standard for a Mistrial

▌ Hollowell alleges that several statements made by the prosecutor during closing and rebuttal argument constituted prosecutorial misconduct and warranted a mistrial. A mistrial is an extreme remedy invoked only when no other curative measure can rectify the situation. *Kent v. State,* 675 N.E.2d 332, 335 (Ind.1996). A trial court's ruling on a motion for a mistrial is afforded great deference on appeal because the trial court is in the best position to evaluate the circumstances and their impact on the jury. *Kent,* 675 N.E.2d at 335. Therefore, the trial court's determination will be reversed only where an abuse of its discretion can be established. *Price v. State,* 656 N.E.2d 860, 863 (Ind.Ct.App.1995), *trans. denied* (1996). This Court will not disturb a trial court's denial of a motion for a mistrial unless the defendant shows that the conduct was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Id.*

▌ Where a motion for a mistrial is based upon a claim of prosecutorial misconduct, this Court must determine (1) whether there was misconduct by the prosecutor and (2) whether that misconduct, under the circumstances, placed the defendant in a position of grave peril to which he should have not been subjected. *Kent,* 675 N.E.2d at 335. The gravity of peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct. *Id.* When an isolated instance of misconduct does not establish grave peril, repeated instances may evidence a deliberate attempt to improperly prejudice the defendant and result in a reversal. *Id.* at 337.

▌ In judging the propriety of a prosecutor's remarks, this Court considers the statement in the context of the argument as a whole. *Horn v. State,* 176 Ind.App. 527, 530, 376 N.E.2d 512, 514 (1978). It is proper for a prosecutor to argue both law and fact during final argument and propound conclusions based upon his analysis of the evidence. *Sevits v. State,* 651 N.E.2d 278, 283 (Ind.Ct.App.1995), *trans. denied.*

We first note that Hollowell has failed to argue or cite to any relevant authority in support of his contention that the prosecutor in her final argument misstated the law regarding the elements of battery that the State was required to prove. Ind. Appellate Rule 8.3(A)(7) requires that the appellant support each contention with an argument, including citations to legal authorities, statutes, and the record for support. Failure to present a cogent argument constitutes a waiver of that issue for appellate review. *See, e.g., Matheney v. State*, 688 N.E.2d 883, 907 (Ind.Ct.App.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 1046, 143 L.Ed.2d 53 (1999); *Shaw v. State*, 595 N.E.2d 743, 746 (Ind.Ct.App.1992).

Waiver notwithstanding, Hollowell's argument is still without merit. During final argument, the prosecutor discussed the elements of battery as a Class C felony in the disjunctive and then began to discuss Clark's injuries. Hollowell objected, arguing that the State was required to prove both use of a deadly weapon and serious bodily injury. The trial court overruled his objection. Immediately following his objection, the prosecutor began to discuss the evidence showing that Hollowell had used a deadly weapon to commit the battery. Although the State discussed the elements of battery in the disjunctive, it presented evidence to establish that Hollowell committed battery using a deadly weapon and causing serious bodily injury. Furthermore, the trial court instructed the jury that "the instructions of the court are the best source in determining what the law is," that the jury must "consider the instructions as a whole," and that "the State must prove every element beyond a reasonable doubt." The prosecutor's argument including both elements and the trial court's instructions cured the alleged misstatement of the law.

Second, Hollowell claims that the prosecutor misstated the law of self-defense. In the State's rebuttal argument, the prosecutor stated:

And the Defendant's actions afterwards— In the case of *Geralds versus State*, 'The right of self-defense is extinguished where the person has used more force than is reasonably necessary to repel [an] attack.' What happened in this case was a defendant—When all danger—an apparent danger has passed, the right to use force ends. If one continues to pursue a retreating assailant, he then becomes the aggressor and come—can no longer rely on the theory of self-defense. What we had here, folks, we had somebody who brought a knife to a fistfight. And the law says you can't do that. You're only permitted to use what force is necessary. If someone turns out to be losing, can you pull a gun and blast somebody?

Hollowell objected, arguing that the law of self-defense does not state that if someone is getting beat up that a person cannot use a weapon to stop the beating. The trial court sustained Hollowell's objection. Hollowell is correct that the law of self-defense does not state that a person is not permitted to use a weapon when he is being beaten. However, we cannot find that this alleged misstatement had any persuasive effect on the jury's decision. Moreover, final instructions are presumed to correct any misstatements of law made during final arguments. *Jackson v. State*, 273 Ind. 49, 55, 402 N.E.2d 947, 951 (1980). Therefore, the trial court did not abuse its discretion in denying Hollowell's motion for a mistrial.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

STATON and RILEY, JJ., concur.