**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Dec 19 2014, 6:38 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**STEVEN E. RIPSTRA**
**MELISSA J. HALEY**
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINE REDELMAN**
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF:  )
)
)
B.A., Minor Child,  (
)
   and  )
)
A.A., Father,  )
)
   Appellants-Respondents,  )
)
     vs.  )   No. 19A01-1406-JT-257
)
THE INDIANA DEPARTMENT OF CHILD SERVICES,  )
)
)
   Appellee-Plaintiff.  )

APPEAL FROM THE DUBOIS CIRCUIT COURT
The Honorable William E. Weikert, Judge
Cause No. 19C01-1307-JT-153

**December 19, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

A.A. (Father) appeals the termination of his parental rights to B.A. (Child). He asserts the Department of Child Services (DCS) did not prove by clear and convincing evidence that there was a reasonable probability the conditions resulting in Child's removal would not be remedied, continuation of the parent-child relationship posed a threat to Child, termination is in Child's best interests, and there existed a satisfactory plan for the care and treatment of Child. We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 14, 2012, when Child was approximately two years old, DCS received a report that, among other things, the trailer where Child was living did not have water or electricity, that trailer smelled like rotten food and was covered in trash, the parents[1] were using alcohol and an illegal substance, and the family was in the process of being evicted. DCS discovered the trailer was very hot, without utilities, and littered with trash. There were flies on Child that were "getting into his mouth." (*Father's Addendum* at 11.)

DCS began an Informal Adjustment (IA) around that time. The parents had trouble with employment, finances, and maintaining housing, and there were domestic violence issues. The IA was closed and Child was removed on October 18, 2012, after his parents were involved in a domestic violence incident involving a knife.

DCS filed a petition on October 22, 2012 to declare Child a Child in Need of Services (CHINS). On October 25, 2012, Child was adjudicated as a CHINS after Mother admitted that "home conditions were unsafe for a child and domestic violence" occurred in the home.

---

[1] Mother is not a party to this appeal.

(*Id.* at 17). Father made the same admission on November 21, 2012, and the juvenile court affirmed the CHINS adjudication.

The juvenile court held a dispositional hearing on December 17, 2012. On January 3, 2013, it ordered Father to, among other things, maintain stable housing and income; obey the law and follow all the terms of his probation; refrain from using drugs and submit to random drug screens; successfully complete Intensive Family Preservation services; and visit Child. On April 5, 2013, the juvenile court ordered Father to demonstrate stability and self-sufficiency in income and housing, and to participate in parent aid services and work to develop a budget for self-sufficiency.

On July 9, 2013, DCS filed a Petition for Involuntary Termination of the Parent-Child Relationship, and a Motion to Cease Services and Visitations. The juvenile court held a hearing on the Termination Petition on December 28, 2013. On March 21, 2014, the juvenile court issued written Findings of Fact and Conclusions of Law and an Order terminating Father's parental rights to Child. Father filed a Motion to Correct Errors, which the trial court denied.

## DISCUSSION AND DECISION

We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we

3

will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

To terminate a parent-child relationship, the State must allege and prove:

(A) that one (1) of the following is true:
(i) The child has been removed from the parent for at least six

4

(6) months under a dispositional decree.

    (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

    (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

    (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the juvenile court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

Father disputes that DCS proved by clear and convincing evidence[2] that there was a

---

[2] Father also disagrees with some of the Findings of Fact and Conclusions of Law, but he does not make specific arguments as to the accuracy of those findings and conclusions. Indiana Appellate Rule 46(A)(8)(a) mandates that the contentions of the appellant on the issues presented "must be supported by citations to authorities, statutes, and the Appendix or other parts of the Record on appeal relied on." Failure to present a cogent argument results in waiver of the issue on appeal. *Hollowell v. State*, 707 N.E.2d 1014, 1025 (Ind. Ct. App. 1999).

reasonable probability the conditions resulting in Child's removal from the home will not be remedied, and that continuation of the parent-child relationship between Father and Child posed a threat to the well-being of Child.[3]  Further, Father denies termination of parent-child relations was in the best interests of the Child or a satisfactory plan existed for the care and treatment of Child.

      1.     <u>Reasonable Probability Conditions Would Not Be Remedied</u>

The trial court must judge a parent's fitness to care for his child at the time of the termination hearing.  *In re A.B.,* 924 N.E.2d 666, 670 (Ind. Ct. App. 2010).  Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that the conditions will not change.  *Lang v. Starke County OFC,* 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied.*  Failure to visit one's child "demonstrates a lack of commitment to complete the actions necessary to preserve the parent-child relationship."  *Id.*

Here, an IA was started in July 2012 due to parents' lack of utilities and trouble with employment, finances, maintaining housing, sanitation, and domestic violence.  The IA was closed unsuccessfully because parents did not abide by the terms of the agreement, and DCS filed its CHINS petition in October 2012 when Mother and Father were arrested for domestic violence involving a weapon.  As part of the CHINS Dispositional Order, Father was ordered

---

[3] We note DCS does not have to prove both that there was a reasonable probability the conditions that resulted in Child's removal will not be remedied *and* the continuation of the parent-child relationship between Father and Child posed a threat to the well-being of Child.  The statute is written in the disjunctive, and DCS must prove either by clear and convincing evidence.  Ind. Code § 31-35-2-4.  Because there was a reasonable probability conditions leading to Child's removal would not be remedied, we need not address whether the continuation of the parent-child relationship posed a threat to Child's well-being.

to, among other things, obey the law and follow all the terms of his probation; maintain stable housing and income; successfully complete Intensive Family Preservation services; and visit Child. Father did not comply with this order.

Father pled guilty in November 2012 to Domestic Battery and his probation on that charge was revoked in May 2013. He pled guilty in July 2013 to Possession of a Synthetic Drug and Possession of Paraphernalia. Father never progressed toward stable housing. He lived in multiple locations during these proceedings, including a rented trailer without electricity from which he was evicted, a friend's home, a friend's apartment, his paternal great-grandmother's home, and five other homes in a few months. Father has not maintained stable employment; he had five jobs during the pendency of these proceedings and was unemployed at the time of the termination hearing.

Father was "guarded" in therapy and his progress was "low." (Tr. at 18, 76.) He stopped attending therapy altogether prior to the termination hearing. When Father did participate in services such as intensive in-home family therapy, he did not demonstrate progress or an ability to benefit from those services. Father stopped attending visitation and parent aid sessions. He stopped scheduling visits with Child, and had no contact with Child after February 2013.

As Father did not comply with the terms of the Dispositional Order, DCS proved by clear and convincing evidence that the conditions that resulted in Child's removal would not be remedied.

2.    Child's Best Interests

7

In determining what is in a child's best interests, the juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.,* 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed.* A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in a child's best interests. *In re. J.S.,* 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

> The Family Case Manager testified Father:
>
> Hasn't had any contact, seen, interacted . . . done anything with [Child] since February of 2012, almost a year. [Child] has grown and developed immensely since then and unfortunately wouldn't know [Father] at this point if he came up to him. . . . [Child] has also established a bond with his foster family, because that is what he has seen and lived with every day. [Father] has no employment. He has no financial way of meeting [Child's] needs.

(Tr. at 157-58.) The Case Manager testified Father was invited to attend all of Child's well-baby checks, but he did not go to any of those appointments.

The Court Appointed Special Advocate (CASA) testified that, in May 2013 during a team meeting, Father said he was not going to participate in any more services "if he wasn't going to get his child back." (*Id.* at 148.) The CASA testified Father had not shown he could maintain stable housing, provide transportation in case his child got sick, or maintain stable

employment.

The CASA and the Case Manager testified it was their opinion Child's best interests would be served by termination of Father's parental rights and that Child had been living with his foster family for a while and doing well. They testified Child was two years old and needed a permanent home, which could not be with Father.

The juvenile court's conclusion it was no longer in Child's best interests to maintain his relationship with Father was supported by the evidence.

3.      Satisfactory Plan for Child

Pursuant to Ind. Code § 31-35-2-4(b)(2)(D), a juvenile court must find there is a satisfactory plan for the care and treatment of the child. This plan need not be detailed, as long as it "offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re D.D.*, 804 N.E.2d 258, 268 (Ind. Ct. App. 2004), *trans. denied*. DCS's plan for Child is adoption. Adoption is generally a satisfactory plan for care and treatment of a child following the termination of parental rights. *Id.* Father concedes adoption was the DCS plan, but argues Child should have been placed with Child's paternal great-grandparents.

Father argues DCS was incorrect early in the proceedings when it decided not to place Child with his great-grandmother, instead placing Child with a non-relative foster family. Previously, when a parent argued the juvenile court was required to consider placing the child with a relative as an alternative to termination, we rejected that argument:

> In this case, the DCS caseworker testified at the termination hearing that B.M. has been living with his god-parents "for about a year," and that the DCS' plan

9

for B.M. is adoption. . . . Because the DCS established a plan for B.M.'s adoption, Father's contention that the trial court erred in failing to consider B.M's placement with B.R. as an alternative to terminating Father's parental rights also fails on this basis.

*In re B.M.*, 913 N.E.2d 1283, 1287 (Ind. Ct. App. 2009). The juvenile court did not err in finding DCS had established a satisfactory plan for Child. *See In re D.D.,* 804 N.E.2d at 268 (adoption is satisfactory plan following termination).

## CONCLUSION

DCS presented sufficient evidence the conditions under which Child was removed from Father's care would not be remedied, termination of parental rights was in Child's best interest, and there was a satisfactory plan for the care and treatment of Child following termination. Accordingly, we affirm.

Affirmed.

BARNES, J., and PYLE, J., concur.